# IN THE COURT OF APPEALS OF IOWA

No. 23-0882
Filed July 26, 2023

**IN THE INTEREST OF C.M., Z.M., and B.M.,**
**Minor Children,**

**C.M., Father,**
       Appellant.

_____

Appeal from the Iowa District Court for Delaware County, Thomas J. Straka, Associate Juvenile Judge.

A father appeals the termination of his parental rights. **AFFIRMED.**

MaryBeth A. Fleming of MaryBeth Fleming Law Office, P.C., Dubuque, for appellant father.

Brenna Bird, Attorney General, and Mary A. Triick (until withdrawal) and Mackenzie Moran, Assistant Attorneys General, for appellee State.

Bridget Goldbeck of Hughes & Trannel, P.C., Dubuque, attorney and guardian ad litem for minor children.

Considered by Greer, P.J., and Schumacher and Badding, JJ.

**GREER, Presiding Judge.**

C.M., the father,[1] appeals the termination of his parental rights to three children—B.M., born in 2014; Z.M., born in 2018; and C.M., born in 2020. The Iowa Department of Health and Human Services first became involved after the parents had the oldest child, who tested positive for methamphetamine at birth, because of allegations the parents were using and manufacturing the drug in the home. That case was open about a year. Then, soon after the second child was born, similar drug-related concerns arose and the department again stepped in and provided family services for about a year. When the third child was born and tested positive for illegal substances, the department became involved once more for six to nine months. Each time, the children were removed from parental custody and placed with the maternal grandmother. A 2021 substance-abuse evaluation diagnosed the father with stimulant use disorder amphetamine-type substance, moderate/severe and cannabis use disorder, moderate/severe.

A fourth child was born in March 2022. At that time, the department again received allegations about drug use in the home. While investigation of the allegations was still ongoing, the one-month-old newborn unexpectedly died. Because of the allegations, a search warrant was executed, which resulted in the discovery of methamphetamine and marijuana paraphernalia, as well as methamphetamine in the home. According to the parents, because of grief over their fourth child's death, they relapsed. The father admitted the methamphetamine found was his and subsequently tested positive for the

---

[1] R.M., the mother of all three children, also had her parental rights terminated; she does not appeal.

substance. The mother also tested positive for methamphetamine. All three children were adjudicated children in need of assistance (CINA) and placed with the maternal grandmother.

In December 2022, while the children were at the parents' home for a visit, the father was arrested for drug charges and child endangerment. Based on the methamphetamine and marijuana found in the home and accessible to the children,[2] a founded child abuse assessment was filed. The father remained incarcerated until late February 2023,[3] around the same time the State filed for termination of his parental rights to the children. After his release, he reengaged with substance-abuse treatment, mental-health counseling, medication management, his parent partner, Family Centered Services, and SafeCare. And, on the plus side, the father located a one-bedroom apartment the social worker testified was appropriate and was actively looking for a job after recently being laid off. Between his release and the April termination hearing, he provided multiple negative drug screens both to the department and his probation officer. The social worker also testified there was an observable bond between the children and the father, noting that the father had not missed any visits after his release. Before his incarceration, however, the father was less consistent with his visitation— according to the service provider who supervised the visits—so, all in all, the father missed twenty-seven of their eighty-three offered visits.

---

[2] The assessment noted "various items in the home that may be indicative of methamphetamine manufacturing."
[3] The father remains on probation until February 2024.

At the termination hearing in April 2023, the father disputed the grounds for termination and also asked for a six-month extension to work toward reunification. At that time, he testified he had been sober since his last self-reported use in October 2022; with an additional six months, he could show a year of sobriety. He testified he intended to remain separated from the mother and find a sponsor to help with this endeavor. Service providers testified they did not believe an additional six months would resolve their concerns with his substance abuse because he had previously shown an ability to be sober for periods of time but had not maintained that sobriety. On their end, the children remained with their maternal grandmother; though she does not intend to adopt, other family members have begun the process to be approved as an adoptive placement.

The juvenile court terminated the father's parental rights to the older two children under Iowa Code section 232.116(1)(f) (2023), the younger child under section 232.116(1)(h), and all three children under section 232.116(1)(*l*). He now appeals.

On appeal, while the father does not dispute the grounds for termination; he argues the court should have granted his request for a six-month extension or should have utilized the permissive exception to termination found in Iowa Code section 232.116(3)(c). We review the termination of parental rights de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). The father makes the case that things are different now because the mother is in prison and is no longer a bad influence on his progress. And we commend him for gains he made after his release. But we, like the juvenile court, have concerns given this is the fourth involvement with the

department over an almost nine-year history and because of the father's long-standing addiction issues.

In order to grant an additional six-months, the juvenile court must be able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). The juvenile court here could not do that. While the father testified he had been sober since October 2022, drugs were found in the home shortly after that date and he was incarcerated on drug charges until two months before the termination hearing. *See In re N.F.*, 579 N.W.2d 338, 341 (Iowa 1998) ("Where the parent has been unable to rise above the addiction and experience sustained sobriety in a noncustodial setting, and establish the essential support system to maintain sobriety, there is little hope of success in parenting."); *In re P.F.*, No. 15-1103, 2015 WL 5970017, at *3 (Iowa Ct. App. Oct. 14, 2015) (recognizing that sobriety in a structured, custodial setting does not demonstrate an ability to maintain sobriety in the community). And, while he had been successful in the two months following his release, we agree with the juvenile court that this short period of time, even given an extra six months, cannot outweigh the father's repeated, demonstrated inability to maintain long-term sobriety. *See In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) ("[W]e look to the parent['s] past performance because it may indicate the quality of care the parent is capable of providing in the future." (citation omitted)). As the social worker manager summarized, "We've been down this road so many times. These kids can't keep going through this. They need to be in a permanent placement." On

our de novo review, we agree with the juvenile court that six months will not alleviate this concern and allow the children to be returned home.

We turn next to the permissive exception. Iowa Code section 232.116(3)(c) allows the juvenile court to not terminate if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." While the providers testified there was a bond between the father and the children, the father bears the burden of establishing the exception to termination. *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018). And on this record, while the father has been very clear that he loves his children, there is no indication that the bond is so strong that termination would be detrimental to the children and overcome the need for termination.

At this point in time, the children have been in and out of their father's custody for their entire lives, and their need for permanency and stability is best served by termination. We affirm the termination of the father's parental rights.

**AFFIRMED.**